5 F.3d 319
 85 Ed. Law Rep. 1010
 Hettie STANDLEY, Jana Klein, Marilyn Schoppenhorst, Dara
Kiely, Appellants,
Arthur Wickman, Plaintiff,
Ruthann Burgess, Appellant,
v.
CHILHOWEE R-IV SCHOOL DISTRICT, a public corporation, Appellee,
Jerry L. Merrell, individually and in his official capacity
as superintendent in the Chilhowee R-IV School
District, Defendant,
Yale Turnham, individually and in his official capacity as
Principal in the Chilhowee R-IV School District, Appellee.
 Nos. 92-2207, 92-3059.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1993.
Decided Sept. 17, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 26, 1993.
 
 Andrew D. Roth and Jeremiah A. Collins, Washington, DC (Lisa S. Van Amburg, St. Louis, MO, appeared on the brief), for appellants.
 Emily Jane Bailey, Kansas City, MO (Robert B. Best, Jr., Kansas City, MO, appeared on the brief), for appellees.
 Before BOWMAN and MORRIS S. ARNOLD, Circuit Judges, and MAGNUSON,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Appellants Hettie Standley, Jana Klein, Marilyn Schoppenhorst, Dara Keily, and Ruthann Burgess,[1] who received verdicts in their favor from the trial jury, appeal from several of the post-trial rulings of the District Court.[2]
 
 
 2
 Appellants are former teachers in the Chilhowee R-IV School District whose teaching contracts were not renewed for the 1989-90 school year. They brought suit against the district, its superintendent, and the principal of their school alleging the following: Count I--under 42 U.S.C. Sec. 1983, the nonrenewal of their contracts was motivated by plaintiffs' speech and associational activities and therefore violated their First Amendment rights; Count II--defendants breached plaintiffs' teaching contracts by failing to provide plaintiffs with proper performance evaluations; Count III--defendants violated Missouri Revised Statutes Sec. 168.128 (1986) by failing to provide plaintiffs with proper performance evaluations; Count IV--defendants violated Missouri Revised Statutes Sec. 168.126.2 (1986) by failing to provide plaintiffs with an accurate statement of the reasons for not renewing their contracts.
 
 
 3
 The case was tried to a jury. Before the case was submitted to the jury, the parties agreed, due to the duplicative nature of Counts II and III, that Count II be submitted to the jury but that the court determine liability under Count III. The jury returned unanimous verdicts in favor of each plaintiff on Counts I, II and IV.[3] The jury also awarded plaintiffs Standley, Klein, Burgess, and Keily $5000 each in punitive damages under Count I against school principal Yale Turnham.
 
 
 4
 After the jury verdicts were in, appellants moved for reinstatement to their teaching positions in the Chilhowee R-IV School District, or, in the alternative, for front pay. In its January 7, 1992 order, the District Court denied both forms of equitable relief and also denied appellants' claim for damages under Count III. In its March 31, 1992 order, the court set aside the punitive damages awards against Turnham and also granted judgment as a matter of law in favor of appellees on Counts II and IV. The District Court granted appellants an award of attorney fees and costs, but not in the full amounts appellants had requested. Appellants challenge each of these post-trial rulings.
 
 
 5
 Appellants contend that they should be awarded reinstatement or, in the alternative, front pay. Reinstatement and front pay are equitable remedies. See Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir.1988). "We review a district court's imposition or denial of equitable relief for abuse of discretion." Foy v. Klapmeier, 992 F.2d 774, 779 (8th Cir.1993). Ordinarily, reinstatement would follow a finding of Sec. 1983 liability for nonrenewal of a teaching contract; in extraordinary circumstances, however, reinstatement may not be the appropriate remedy. See Dickerson v. Deluxe Check Printers, Inc., 703 F.2d 276, 281 (8th Cir.1983) (recognizing that "extreme animosity" between plaintiff and defendant-employer is ground for denying reinstatement). If the trial court decides not to award reinstatement, it then has discretion whether or not to award front pay. Wildman v. Lerner Stores Corp., 771 F.2d 605, 616 (1st Cir.1985).
 
 
 6
 Appellants argue that no extraordinary circumstances exist to justify the denial of reinstatement. We disagree. The Chilhowee R-IV School District is extremely small; the district has only one school building, which houses all of the approximately 150-155 students in kindergarten through twelfth grade. There are approximately twenty teachers, who must work together every day. The trial record bristles with extensive testimony about the tense and hostile atmosphere that existed at the school, not only between appellants and the individual appellees, but also between appellants and other teachers. One incident that is a telling example of the poor relationship between appellants and the other teachers occurred when certain teachers gave appellant Standley some "tasteless gifts" (cow manure, a pregnancy test kit, and a condom). When one teacher gave the gifts to Standley, the teacher allegedly said, "I enjoyed screwing you out of your job." Tr. at 1404.[4] The District Court denied reinstatement because the hostility between appellants and those with whom they must work in this tiny, rural school district would make future cooperation impossible. Indeed, it seems plain that the friction that precipitated this lawsuit and that would dog the school district if appellants were returned to their teaching positions makes reinstatement an ill-advised remedy in this case. See Dickerson, 703 F.2d at 281 ("friction arising from the litigation process itself is not alone sufficient to deny" reinstatement). Considering the totality of the circumstances, we conclude that the District Court did not abuse its discretion in denying appellants reinstatement.
 
 
 7
 In the alternative, appellants argue that they should be awarded front pay. As noted earlier in this opinion, front pay is an equitable remedy and may be awarded at the court's discretion. Woodline, 852 F.2d at 1065. The question of front pay--whether to award it and in what amount--poses a difficult question for the trial court. After a jury finds Sec. 1983 liability in a loss-of-employment case, the court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall. The court does not know how long the plaintiff actually would have remained working at the job, whether the plaintiff soon would have left for a different, perhaps better-paying, job, or whether the plaintiff soon would have been dismissed for legitimate reasons. Because the trial court must consider many complicated factors in deciding whether to award front pay, this Court applies a deferential standard of review to the trial court's decision. See Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir.1991) (stating that trial court needs discretion in "shaping the appropriate remedy" because of the many factors that must be considered), cert. denied, --- U.S. ----, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991). Here, appellants were all probationary teachers with one-year contracts. Their contracts were not renewed for the 1989-90 school year. The jury's award of damages compensated appellants for their lost salary and benefits for the 1989-90, 1990-91, and 1991-92 school years. We cannot conclude that the District Court abused its discretion in declining to award front pay, thereby limiting appellants' recovery to the three school years immediately following appellants' final year in the employ of the district.
 
 
 8
 Appellants contend that it was error for the District Court to grant judgment as a matter of law overturning both the jury's award of punitive damages against Yale Turnham and the jury's verdict under Count IV. We review de novo a district court's grant of judgment as a matter of law, affirming if "the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." Caudill v. Farmland Indus., Inc., 919 F.2d 83, 86 (8th Cir.1990). Furthermore, we limit our review "to determining whether [plaintiffs] introduced evidence sufficient to create an issue of fact for the jury ... [and,] [l]ike the district court, we must view the evidence in favor of the party that opposed the entry of judgment and give that party all reasonable inferences arising from the facts." Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 478 (8th Cir.1993) (citation omitted).
 
 
 9
 A jury may assess punitive damages under Sec. 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). After a careful review of the record, we agree with the District Court that the evidence does not support an award of punitive damages. The evidence that appellants cite in support of the punitive damages award is simply evidence supporting the jury's finding that appellants' First Amendment activities were a motivating factor in the decision not to renew their teaching contracts. That evidence does not rise to the level of "evil motive" or "reckless or callous indifference." We therefore affirm the District Court's decision to overturn the award of punitive damages against defendant Turnham.
 
 
 10
 Similarly, we conclude that the court did not err in granting appellees' motion for judgment as a matter of law on Count IV. The jury was instructed that in order to find for appellants under Count IV, it must find that the letter that the school district sent to appellants stating the reason for not renewing their contracts "was issued in bad faith and with malice." Instruction No. 84. The instruction was based on the statute, which states that no cause of action accrues thereunder "so long as the board issues the letter in good faith without malice." Mo.Rev.Stat. Sec. 168.126.2. Based on the court's instruction, to which appellants made no objection, the evidence must support a finding of both malice and bad faith before liability will attach. The instruction defined malice as "an evil motive or reckless indifference to the rights of others." Instruction No. 86. The instruction did not attempt to define bad faith.
 
 
 11
 Each appellant received a letter from the school district stating simply that her contract would not be renewed because renewal was not in the best interest of the district. The only evidence in the record concerning these letters shows that Superintendent Merrell sought the advice of the legal department of the Missouri Department of Elementary and Secondary Education before drafting and sending the letters. Again, the only evidence that appellants offer to support findings of malice and bad faith is the evidence supporting the jury's assignment of liability under Count I. Based on our review of the record, we conclude that as a matter of law this evidence is insufficient to establish malice and bad faith. Furthermore, the mere showing that the school district's statement of its reasons was incomplete does not support a finding of malice and bad faith. Seeing nothing in the record that can support a finding that the school district acted with "evil motive" or "reckless indifference" to appellants' rights in issuing these letters to appellants, we affirm the District Court's grant of judgment as a matter of law in favor of appellees on Count IV.
 
 
 12
 Appellants next argue that the District Court erred in overturning the jury's award of damages under Count II, breach of contract for failure to comply with Missouri Revised Statute Sec. 168.128 in giving appellants their performance-based evaluations, by ruling that the damages were duplicative of the damages awarded under Count I.[5] Appellants contend that the award under Count I was solely for lost compensation, while the award under Count II was for emotional distress. We are not persuaded.
 
 
 13
 Although appellants argue that the award under Count II was for emotional distress damages, Count II propounds a contractual theory of recovery. Ordinarily, emotional distress damages are not available in a contractual dispute, and appellants have offered no persuasive authority to convince us that emotional distress damages are available under Count II.
 
 
 14
 Furthermore, the damage instructions for Counts I and II were identical; each instruction stated that if the jury found for a plaintiff on that count, it should award that plaintiff "such sum as you believe will fairly and justly compensate [plaintiff] for any damages you believe she sustained." Instruction Nos. 14, 66. Appellants' theory of recovery under Count I was based on appellees' violations of appellants' First Amendment rights. Therefore, based on the District Court's general instruction on damages, the jury could have awarded appellants damages for loss of income and damages for emotional distress. See Hinkle v. Christensen, 733 F.2d 74, 76 (8th Cir.1984) (stating that general instruction on damages covered loss of income, loss from damage to professional reputation, and mental pain and suffering). Because both damage instructions were general, we decline to do as appellants suggest and speculate as to the jury's thinking in fashioning awards under both counts. The District Court found that since appellants were fully compensated under Count I, damages were not appropriate under Count II. After a careful review of the entire record, we agree. Thus we affirm the District Court's grant of judgment as a matter of law as to Count II.[6]
 
 
 15
 Finally, appellants challenge the attorney fees awarded pursuant to 42 U.S.C. Sec. 1988. They contend that the District Court erred by reducing the overall fee request by seventy percent, by denying recovery for computer-based legal research, and by reducing counsels' hourly billing rate. "Because an award of attorney fees is 'uniquely [within] the district court's discretion,' the scope of our review in an attorney fees dispute is limited. We will not overturn a fee award 'absent an abuse of discretion or an error in implementing the governing legal standards.' " McDonald v. Armontrout, 860 F.2d 1456, 1458 (8th Cir.1988) (quoting Wilmington v. J.I. Case Co., 793 F.2d 909, 923 (8th Cir.1986)) (alteration in McDonald ).
 
 
 16
 The District Court reduced the overall fee request by seventy percent because of appellants' limited success:
 
 
 17
 If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.
 
 
 18
 Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). As a result of the District Court's rulings on the post-trial motions, appellants were successful only on Count I of their complaint. Although we agree with appellants that Count I was the most significant claim, they spent a considerable amount of time, both pretrial and during the trial, pursuing unsuccessful claims. In view of appellants' limited success, we cannot say that the District Court abused its discretion by reducing the amount of the attorney fees award by seventy percent from the amount requested.
 
 
 19
 Appellants contend that they are entitled to reimbursement for computer-based legal research as an element of non-taxable costs. In Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir.1983), this Court stated that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." Appellants' asserted distinction between non-taxable costs and taxable costs in this instance is meaningless. Based on Leftwich, the law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award.[7]
 
 
 20
 Appellants contend that the District Court improperly reduced their attorneys' hourly billing rates, which were based on prevailing rates in the relevant market in the year 1992. We agree. The District Court accepted appellees' contention that even if the prevailing hourly rate for partners was $175 an hour in 1992, most of the work was done in and prior to 1991, and thus it would be inappropriate to allow counsel to recover the prevailing hourly rate for 1992. The Supreme Court, however, has recognized that under the fee-shifting provisions of 42 U.S.C. Sec. 1988, "compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." Missouri v. Jenkins, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). The Court has noted that "[i]n setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 716, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987). Thus we vacate the present fee award and remand the case to the District Court for reconsideration of that award, taking the delay factor into account as an appropriate factor to be considered in determining the hourly rates upon which to base the award. We leave to the sound discretion of the District Court the question of whether, in the circumstances of this case, the delay factor warrants an increase in the historical billing rates of appellants' attorneys and, if so, the extent of the increase.
 
 
 21
 For the reasons stated above, the award of attorney fees is vacated and the case is remanded for reconsideration of the fee award in a manner consistent with this opinion. In all other respects, the judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Plaintiff Arthur Wickman settled with defendants and is not a party to this appeal
 
 
 [2]
 The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri
 
 
 [3]
 On Count I, the jury awarded plaintiffs the amounts they requested for lost wages and benefits, which plaintiffs detailed in trial exhibits. The damage awards for Count I were as follows: Hettie Standley--$33,453.81; Jana Klein--$43,395.08; Ruthann Burgess--$15,432.20; Dara Keily--$32,187.50; and Marilyn Schoppenhorst--$23,397.00. On Count II, the jury awarded each plaintiff $20,000 in damages, and on Count IV, the jury awarded each plaintiff $5000 in damages
 
 
 [4]
 Appellants' behavior also contributed to the tense and hostile atmosphere in the workplace. For example, one teacher testified that when she walked down the hall appellant "Standley would make pig noises with regard to me being fat." Tr. at 950
 
 
 [5]
 The District Court previously denied recovery under Count III, the count that the parties had submitted directly to the court, stating that both Count II and Count III were based on appellees' failure to properly conduct performance-based evaluations, so that any award under Count II would fully compensate appellants under Count III as well. The District Court apparently did not address the question of whether appellees were liable under Count III
 
 
 [6]
 Appellants also argue that if we affirm the District Court as to Count II, then we should remand the case to allow emotional distress damages to be awarded under Count I. The jury instruction for damages under Count I did not preclude an award of such damages; we see no reason to remand the case to allow appellants to seek damages that the jurors could have awarded, had they felt it appropriate, at the trial
 
 
 [7]
 Counsels' time spent doing the computer-based legal research is compensable as part of counsels' billable hours. It is the actual cost to the attorneys for their on-line computer time that, under Leftwich, is a component of attorney fees and cannot be recovered in addition to the fee award