Ramakrishna C.V. RAO, Plaintiff,

v.

### NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, et al., Defendants.

Nos. 89 Civ. 2700, 89 Civ. 7060 (JGK).

United States District Court, S.D. New York.

April 7, 1995.

Michael H. Sussman, Sussman Law Offices, Goshen, NY, for plaintiff.

Paul A. Crotty, Corp. Counsel of the City of New York, New York City (Steven J. Rappaport, Bruce Rosenbaum and Julie O'Neill, of counsel), for defendants.

## OPINION & ORDER

KOELTL, District Judge.

After a nine day trial of these consolidated cases, a jury returned a verdict based on answers to special interrogatories finding for the plaintiff, Ramakrishna Rao, against defendants Anthony Japha, Dennis Newman, and Robert Weigand on the plaintiff's claim that their termination of his employment at the New York City Health and Hospital's Corporation ("HHC") violated his First Amendment rights. The jury awarded compensatory damages of $100,000 under 42 U.S.C. § 1983. It found defendant Paul Rozsypal not to be liable for any violation of the plaintiff's First Amendment rights and found that none of the defendants terminated the plaintiff's employment on account of his national origin.[1] The jury also found that the wrongful actions of the liable defendants were not taken pursuant to an official policy, custom, or practice of HHC and therefore found HHC not to be liable to the plaintiff. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In addition to his § 1983 claims for violation of First and Fourteenth Amendment rights, the plaintiff pleaded claims for violations of Title VII of the Civil Rights Act of 1964 which were not presented to the jury, because this action was filed prior to the 1991 amendments to the Act. *See Postema v. National League of Professional Baseball Clubs*, 998 F.2d 60, 61–62 (2d Cir.1993) (holding that 1991 Civil Rights Act amendments to Title VII providing for jury trials are not retroactive).

There are presently four applications before the court regarding the judgment to be entered. The plaintiff seeks reinstatement to his position with HHC, or alternatively front pay, prejudgment interest on the damage award, and a letter stating that he was terminated from HHC in violation of his

---

1. Defendant Jo Ivey Boufford was dismissed from the action prior to trial.

First Amendment rights. The defendants seek the entry of findings of fact and conclusions of law in their favor on the plaintiff's Title VII claims.

At trial, all of the defendants admitted to having participated in the termination of the plaintiff's employment with HHC in March, 1987. The jury was asked to determine whether: 1) the individual defendants were motivated by Rao's national origin to terminate his employment, and 2) whether Rao had engaged in various forms of speech that the Court found to be protected by the First Amendment and whether such speech was a substantial or motivating factor in the defendants' termination decisions. The jury found that for defendants Japha, Newman, and Weigand the following instances of protected speech were substantial or motivating factors in their decisions to terminate Rao: (1) Rao's verbal complaints about the failure of a contractor, Joseph L. Muscarelle Inc., to comply with the terms of its contract for work to be done at the Cumberland Neighborhood Family Care Center in Brooklyn, and (2) Rao's December 15, 1986 memorandum to defendant Weigand about Muscarelle's alleged failings and about alleged extortionate threats made by a community group demanding money and jobs at the project. Thus, the jury's answers to the special interrogatories established that defendants Weigand, Japha, and Newman terminated Rao's employment in violation of 42 U.S.C. § 1983.[2]

## I.

At argument on the applications, and subsequently in a submission to the Court, the plaintiff stated that, in view of the jury's finding that he was not terminated because of his national origin, he was withdrawing his Title VII claim. At trial, he conceded that the only arguable basis for Title VII liability in this case was that he was terminated due to his national origin, and he withdrew his other Title VII claims. The plaintiff contends that he may now withdraw his remaining Title VII claim, but the defendants have not agreed to allow withdrawal and have submitted brief proposed findings of fact and conclusions of law deciding the claim in their favor.

■ The plaintiff may not unilaterally withdraw his claim after the close of the trial. *See Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114–15 (2d Cir.1985) (holding that district court erred in dismissing claim without prejudice, rather than with prejudice, where claim was withdrawn by the plaintiff at close of trial due to lack of evidence). Therefore, the Court makes the following findings of fact and conclusions of law with respect to the plaintiff's Title VII claim.

On July 21, 1986, HHC hired Rao as a Director, Engineering and Facilities Services, Capital Programs, on the recommendation of defendant Robert Weigand who was Senior Deputy and Chief Engineer, Capital Programs. During his tenure at HHC, Rao's superiors were defendants Weigand; Paul Rozsypal, Group Director, Construction Management, Capital Programs; Dennis Newman, Assistant Vice President and Chief Engineer, Capital Programs; and Anthony Japha, Senior Assistant Vice President, Capital Programs.

Rao was initially assigned as Director of HHC's North District, which encompassed the Bronx and Upper Manhattan. In the North District, Rao had encountered significant difficulties with a subordinate, Gary Yates, whom Rao considered to be insubordinate. In December, 1986, defendants transferred Rao to a temporary assignment as the on-site project manager at the Cumberland Neighborhood Family Care Center in Brooklyn, which was undergoing extensive renovation in HHC's most expensive new construction project at that time. Rao authored a December 15, 1986 memo to defendant Weigand complaining about numerous aspects of the Cumberland project, including alleged deficiencies in the performance of Joseph L.

---

**2.** Section 1983 provides in relevant part that: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Muscarelle, Inc., a contractor, and alleged extortion attempts by a community action group. Weigand was not pleased with the memo, alleging at trial that the reason for his dissatisfaction was that he was already aware of virtually everything reported in it.

On December 23, 1986, Rao met with defendant Japha and they discussed some of Rao's concerns about his employment situation. Japha told Rao that if he could not get along with Weigand, he should find another job.

On or about February 10, 1987, defendant Weigand informed Rao that his services were no longer required and offered him the option of resigning. Weigand had discussed the decision to terminate Rao with both Japha and Newman who concurred. On February 13, 1987, Rao was informed that he had been given an unsatisfactory performance evaluation. Rao received a copy of the evaluation on February 23, 1987.

On February 13, 1987, Rao filed complaints with HHC's Equal Employment Office and the U.S. Equal Employment Opportunity Commission, charging discrimination in the terms and conditions of his employment on the bases of his age, race, color, national origin, religion, and creed.

On or about March 6, 1987, Rao received a letter informing him that his employment with HHC would be terminated effective March 13, 1987.

On March 13, 1987, Rao filed a supplemental charge of discrimination with the EEOC, alleging, among other things, that the decision to terminate his employment was discriminatory and constituted illegal retaliation for his having filed the first EEOC complaint.

During trial, Rao withdrew all claims of discrimination and retaliation under Title VII except his claim that his employment was terminated because he is a native of India. The Court is bound by the jury's determination that no defendant terminated the plaintiff's employment because of a motivation to discriminate against him because he is a native of India. *See Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992) ("It is clear that a judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements"); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir.1988) (finding that when a jury determines a factual issue related to a civil rights claim, the court is precluded from reaching a contrary decision on that issue under Title VII); *In re Lewis*, 845 F.2d 624, 629 (6th Cir.1988) ("One important reason that a judge is not to make findings that contravene a jury's verdict is that the verdict is res judicata with respect to the factual issues which would have necessitated jury resolution"). The Court, therefore, finds that none of the defendants terminated the plaintiff's employment because of a motivation to discriminate against him because of his national origin and dismisses the plaintiff's Title VII claim with prejudice.

The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## II.

The plaintiff seeks prejudgment interest on the $100,000 award of compensatory damages. Section 1983 contains no provision regarding prejudgment interest. The parties agree that when a federal statute is silent concerning the availability of prejudgment interest, a court may award prejudgment interest in accord with its equitable discretion. In *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992), the Court of Appeals for the Second Circuit explained the factors to be applied in making a discretionary award of prejudgment interest:

[T]he award should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham*, 955 F.2d at 833–34 (citations omitted).

■ Awarding prejudgment interest on a § 1983 claim is justified in light of these factors. The purpose of the remedial scheme provided by 42 U.S.C. § 1983 is to fully compensate individuals for harm suffered as a result of a constitutional violation. Prejudgment interest is usually a necessary component of any award intended to make a plaintiff whole, because it compensates a plaintiff for delay in the receipt of relief. Consequently, prejudgment interest is generally appropriate in § 1983 actions. It is especially appropriate in employment termination situations where a plaintiff has been deprived of wages. *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992) ("Prejudgment interest discourages an employer from attempting to 'enjoy an interest-free loan for as long as [it can] delay paying out back wages.' ... Thus, we have held that 'it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award.' ")

In *Frank v. Relin*, 851 F.Supp. 87, 91 (W.D.N.Y.1994), the court granted the plaintiff prejudgment interest on an award of back pay under § 1983, finding that:

> Plaintiff is entitled to prejudgment interest here for the same reasons others who have been terminated on account of discrimination have been awarded prejudgment interest.... Plaintiff has been without her lost pay for several years because of the discriminatory acts of defendant. The purpose of back pay is to make her whole and that can only be accomplished if she receives compounded, prejudgment interest. An award of prejudgment interest is necessary to fully compensate plaintiff, is not inequitable and would not create a windfall for plaintiff.

*Frank*, 851 F.Supp. at 91.

Citing the fourth *Wickham* factor, that the court may rely on general principles it deems to be relevant when deciding whether to award prejudgment interest, the defendants argue that awarding prejudgment interest in this case would violate the general principle that an award of prejudgment interest should not result in over-compensation of the plaintiff. *See Wickham*, 955 F.2d at 834. The defendants argue that an award of prejudgment interest would result in a windfall to the plaintiff, because it is likely that a portion of the jury's $100,000 award is not properly subject to an award of prejudgment interest.

The jury was instructed as follows regarding the calculation of damages:

> Should you decide that the plaintiff has proved his claim, you must award the plaintiff such sum of money as you believe will fairly and justly compensate him for any injury which you believe he actually sustained as a direct consequence of the unconstitutional act in question.

> You should award actual damages only in an amount to compensate him for those injuries which you find the plaintiff has proved by a preponderance of the evidence. Moreover, you should award actual damages only for those injuries which have been proved to be a direct result of conduct by the defendant that violated Section 1983. That is, you may not simply award actual damages for any injury suffered by the plaintiff—you must award actual damages only for those injuries that are a direct result of actions by the defendant you are considering and that violated the plaintiff's constitutional rights protected under Section 1983.

> Actual damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence.

> The plaintiff also claims mental suffering and damage to his reputation as components of his damages. Although mental suffering and damage to reputation can never be measured precisely, the lack of a measuring device should not prevent the award of damages provided that those damages may reasonably be determined from the preponderance of the evidence.

The defendants argue that prejudgment interest is not appropriate on awards for emotional distress or lost employment benefits other than back pay. The only authority cited by the defendants for this proposition is *Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir.1993), a case in which the Court of Appeals for the Second Circuit upheld the district court's grant of prejudgment interest

on an award of back pay. The district court did not grant prejudgment interest on damage awards for emotional distress and lost pension benefits and the court of appeals did not address its refusal to do so. Thus, the opinion does not stand for the proposition that it is inappropriate to grant prejudgment interest on such awards.

In the present case, it is clear from all of the testimony that all or virtually all of the compensatory damages represent compensation for the plaintiff's lost wages. The plaintiff was earning approximately $50,000 a year prior to his termination in March, 1987. The most reasonable and understandable explanation for the jury's award is that it found that the plaintiff should be compensated for two years of lost wages, but no more. There was almost no testimony about the plaintiff's emotional distress. Moreover, on the basis of all the credible testimony, there is no reason to believe that the jury would have awarded Rao substantially less than two years of back pay, given that he has been unemployed for approximately seven years after being terminated in violation of his First Amendment rights. The jury may have limited Rao's damages to two years of wages as a result of finding either that he failed to mitigate his damages or that HHC had not proximately caused his inability to be able to find work two years after his termination.

It is equitable to award the plaintiff prejudgment interest on the entire damage award, because the entire award, or virtually all of it, is compensation for lost wages. Indeed, it would be inequitable to withhold prejudgment interest on the ground that some portion of the damage award may have been intended to compensate the plaintiff for emotional distress or lost benefits. The parties expressly agreed during trial, before the jury was charged, that the issue of prejudgment interest—both with respect to entitlement and with respect to amount—would be left to the Court. The defendants cannot now argue that prejudgment interest should be denied because the jury did not specifically allocate the amount of lost wages. *See Frank*, 851 F.Supp. at 89–91 (holding that a court may award prejudgment interest under § 1983 when the issue has not been presented to the jury and that the *Wickham* factors warranted an award of prejudgment interest, because "[p]laintiff was deprived of money that she otherwise would have earned but for defendant's violation of her First Amendment rights").

For the foregoing reasons, the Court finds that an award of prejudgment interest on the $100,000 award of compensatory damages is warranted. Prejudgment interest is necessary to make the plaintiff whole, to avoid unfairness, and to accomplish the purposes of the statute. The defendants admit that this award is within the Court's discretion and acknowledge that their arguments in opposition to the award were intended only to inform the exercise of the Court's discretion and not to challenge the propriety of awarding prejudgment interest.

### III.

The rate of prejudgment interest is also a matter that is committed to the court's discretion. *See Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir.1994); *Frank*, 851 F.Supp. at 91 ("In general, district courts have discretion in deciding what interest rate to use in awarding prejudgment interest. The Second Circuit has not expressly endorsed any particular prejudgment interest rate") (citation omitted). Courts have used a variety of interest rates, including both statutory and market rates. *See, e.g., Frank*, 851 F.Supp. at 91 (collecting cases). 28 U.S.C. § 1961(a) provides that the federal post-judgment interest rate shall be equal to the one year Treasury bill rate at the time of judgment.[3] Because there is no reason that a greater or lesser interest rate should be used to calculate prejudgment in-

---

**3.** Section 1961(a) provides that:
Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment....
28 U.S.C. § 1961(a).

terest than to calculate post-judgment interest, the Treasury bill rate is a reasonable rate to use for an award of prejudgment interest. *See Frank*, 851 F.Supp. at 91 (applying the rate specified in 28 U.S.C. § 1961(a) to calculate prejudgment interest). To account fairly for the considerable fluctuations in the Treasury bill rate, it is appropriate to calculate prejudgment interest according to the average rate over the period for which interest is to be awarded. *See McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 883 (S.D.N.Y.1995) ("Using the average rate provides the plaintiff with an amount that he could have obtained on a relatively safe investment while taking into account the effects of inflation and the fluctuation in the rate over the long period of time involved. It accomplishes the goal of making the plaintiff whole.") (citations omitted).

The defendants argue that any award of prejudgment interest in this case should be calculated at the rate of 3%, as specified in New York Unconsolidated Laws § 7401(5) (McKinney 1994), which states, with respect to HHC, that, "Except as hereinafter provided in this subdivision, the rate of interest to be paid by the corporation upon any judgment or accrued claim against the corporation shall not exceed three per centum per annum." The defendants have represented that HHC will indemnify the liable defendants and that therefore § 7401(5) is applicable.

The defendants do not argue that the Court is bound to apply the 3% interest rate in § 7401(5), but argue only that the Court should take that rate into account in exercising its discretion to set an appropriate rate of prejudgment interest. Given that the liability of the defendants is predicated on a federal civil rights statute and that the Court has discretion in setting the rate, § 7401(5) does not provide a basis for using a rate of prejudgment interest other than the average Treasury bill rate.

In any event, it does not appear that § 7401(5) is applicable to the facts of this case. In *Ebert v. New York City Health and Hosp. Corp.*, 82 N.Y.2d 863, 631 N.E.2d 105, 609 N.Y.S.2d 163 (1993), the New York Court of Appeals held that prejudgment interest at a rate in excess of 3% may not be awarded against an individual defendant whom HHC is required to indemnify under law. The court explained:

Since NYCHHC must indemnify its officers and employees pursuant to General Municipal Law § 50–k and since any judgment payable under that provision shall be payable from the public moneys of the corporation (McKinney's Uncons. Laws of N.Y. § 7401[6], added by L.1979, ch. 673, § 9), NYHHC stands in place of its employee, Doctor Escano. Ultimately NYHHC cannot escape payment of the judgment at issue against Doctor Escano and, thus, becomes by operation of law the real party in interest, obligated to pay only the 3% interest. The otherwise affirmed judgment against Doctor Escano should bear that lower rate of interest.

*Ebert*, 82 N.Y.2d at 866–67, 631 N.E.2d at 106, 609 N.Y.S.2d at 164. *Ebert* makes clear that the reason the statute does not allow an award of prejudgment interest in excess of 3% against a defendant whom HHC must indemnify is that, in such circumstances, HHC is the real party in interest by operation of law.

New York General Municipal Law § 50–k, which requires indemnification of city employees in some situations, provides that:

The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

New York General Municipal Law § 50–k. Section 50–k does not require the city to

indemnify employees when an injury results from intentional wrongdoing. In *Ebert*, the employee's wrongdoing was a result of malpractice. In the present case, defendants Japha, Newman, and Weigand were held liable for an intentional violation of constitutional rights. Thus, it is not apparent that HHC has a duty to indemnify them or that HHC is the real party in interest by operation of § 50–k so that § 7401(5) would apply.

The parties have agreed that any award of prejudgment interest should be calculated on the full award from the date on which the first of the consolidated suits was filed, April 21, 1989, to the present. This agreement avoids the need to determine the amounts on which interest accrues by attempting to determine the period for which the award was intended to compensate the plaintiff and by spreading it out over that period. *Cf. McIntosh*, 873 F.Supp. at 883–84. The parties have further agreed that interest is to be compounded annually[4] and that if the post-judgment Treasury bill rate specified in 28 U.S.C. § 1961(a) is to be used to calculate prejudgment interest, the appropriate rate is 5.4%, which the parties represent as the average rate for one year Treasury bills for the years 1989–1994. The Court finds that 5.4% is a fair and equitable rate, and is therefore appropriate.

### IV.

The plaintiff seeks reinstatement to a position comparable to that from which he was terminated or, alternatively, an award of front pay. Reinstatement is generally recognized to be an appropriate remedy for wrongful termination, because it serves the general purpose of making the plaintiff whole. *See, e.g., Standley v. Chilhowee R–IV School District*, 5 F.3d 319, 321–22 (8th Cir. 1993) (finding that reinstatement normally follows a finding of § 1983 liability for nonre-

newal of a teaching contract); *Reeves v. Claiborne County Bd. of Educ.*, 828 F.2d 1096, 1101 (5th Cir.1987) ("Reinstatement is ... normally an integral part of the remedy for a constitutionally impermissible employment action") (citations omitted).[5]

The defendants argue that reinstatement is not appropriate because defendants Japha and Newman are no longer employed by HHC and do not have authority to rehire the plaintiff and because defendant Weigand, though still employed by HHC, lacks authority as well. The defendants also argue that to order HHC to reinstate the plaintiff would be contrary to the jury's finding that, under the *Monell* doctrine, HHC was not liable for the plaintiff's unconstitutional termination. *See Monell*, 436 U.S. 658, 98 S.Ct. 2018. The defendants are correct that any order to reinstate the plaintiff would wrongfully impose equitable relief on HHC.

Regardless of defendant Weigand's authority to rehire the plaintiff at HHC, reinstatement is inappropriate, because Weigand was not found to be liable in his official capacity. The Supreme Court explained the difference between personal capacity suits and official capacity suits in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives

---

**4.** *See Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993) (holding failure to compound interest on Title VII back pay award was an abuse of discretion, because compounding interest was the only way to make the plaintiff whole), *cert. denied*, —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

**5.** *See also, Jeffries v. Harleston*, 21 F.3d 1238 (2d Cir.) (finding that reinstatement is an appropri-

ate remedy under § 1983 for an unconstitutional termination in violation of First Amendment rights when there is irreparable injury and the plaintiff's injury outweighs any detriment to the public from reinstatement), *cert. granted and judgment vacated on other grounds*, —— U.S. ——, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994), *reversed on other grounds*, 52 F.3d 9 (2d Cir.1995).

notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon* [*v. Holt* ], *supra*, 469 U.S. [464], at 471–472, 105 S.Ct. [873], at 878 [83 L.Ed.2d 878 (1985) ]. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham*, 473 U.S. at 165–166, 105 S.Ct. at 3105 (footnote omitted); *see also Hafer v. Melo*, 502 U.S. 21, 23–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law' ") (quoting *Graham* quoting *Monell*). In *Graham*, the Supreme Court also noted that there is no longer a need to bring official capacity suits against local government officials because under *Monell* local government units can be sued directly for damages and injunctive or declaratory relief. *Graham*, 473 U.S. at 166 n. 14, 105 S.Ct. at 3106 n. 14. In this case, HHC was, in fact, named as a defendant.

In *Graham*, the Court instructed that the course of the proceedings will typically indicate the nature of the liability—personal or official—sought to be imposed on an individual. Although defendant Weigand was named as a defendant in both his personal and official capacities, the jury's verdict demonstrates that he was found to be liable only in his personal capacity. In *Graham*, the court explained that in order for an individual to be liable in his or her official capacity under § 1983, the liability of the municipality must be established under *Monell*:

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell, supra*, 436 U.S., at 694, 98 S.Ct., at 2037); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City v. Tuttle*, 471 U.S. 808, 817–818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *id.*, at 827–828, 105 S.Ct., at 2437, 2438 (Brennan, J., concurring in judgment).

*Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06 (footnote omitted). Since the jury found that HHC was not liable under *Monell* because the plaintiff's termination was not pursuant to a policy, custom, or practice of HHC, Weigand cannot be liable in his official capacity. A finding that Weigand is liable in his official capacity would be a finding that HHC is liable, a finding which the jury found was not warranted.

█ Those courts that have specifically considered the issue of reinstatement have found reinstatement to be appropriate only where, unlike the situation here, an individual defendant is liable in his official capacity—where, in other words, the liability is against the government entity. *See, e.g., Swanson v. Martwick*, 726 F.Supp. 210, 210 (N.D.Ill. 1989) ("[D]efendant Richard J. Martwick was found liable only in his individual capacity. In that capacity, Martwick does not have the authority to reinstate [plaintiff] Swanson"). An order of reinstatement is an equitable remedy that may be directed only at liable individuals in their official capacities or at municipal entities themselves. *See Frank v. Relin*, 1 F.3d 1317 (2d Cir.) ("The [district] court apparently viewed the reinstatement claim, *sua sponte*, as one to which Relin's defense of qualified immunity was applicable. *However, such equitable relief could be obtained against Relin only in his official, not his individual, capacity;* and a defense of qualified immunity may properly be raised only with respect to claims asserted against a defendant in his individual capacity") (em-

phasis added), *cert. denied* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993).[6]

To order reinstatement here would be contrary to *Monell* which found that a municipal entity should only be liable when the unconstitutional actions were pursuant to a policy, custom, or practice, which was not the case here. Such a result would in effect simply impose vicarious liability on HHC, which the Supreme Court in *Monell* expressly prohibited. *See Monell*, 436 U.S. at 691–95, 98 S.Ct. at 2036–38.

The plaintiff cites *Conklin v. Lovely*, 834 F.2d 543 (6th Cir.1987), in support of his argument that a court can order reinstatement when an individual defendant is liable in his or her individual capacity for a plaintiff's unconstitutional termination although no individuals are liable in their official capacities nor is the municipal employer liable. *Conklin* is inapposite. The liable defendants in that case argued that they were without authority to reinstate the plaintiff. The court rejected this argument, finding that under state law the defendants had authority to appoint the plaintiff because they were "coemployers" with the county, which the defendants had argued possessed exclusive authority to reinstate the plaintiff. Thus, in that case, the court found that in order to reinstate the plaintiff it was not necessary to issue an order to the county or to the individual defendants in their official capacities as agents of the county, because an order directed to the individual defendants in their capacities as "coemployers" would be sufficient. In this case, there has been no allegation that Weigand possesses the unusual authority to act as a coemployer with HHC.[7] Indeed, HHC argues that Weigand does not have the unilateral authority to hire Rao. In addition, *Conklin* was decided before the Supreme Court's decision in *Graham* and did not address the relevance of *Monell* to the issue of reinstatement.[8]

**V.**

When reinstatement is impracticable, a court has discretion to consider whether a plaintiff should receive an award of front pay to compensate for continuing harm resulting from an unconstitutional termination. Front pay is an equitable remedy that may be awarded in the court's discretion. *Standley v. Chilhowee R–IV School District*, 5 F.3d 319, 322 (8th Cir.1993). In *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir. 1984), the Court of Appeals for the Second

6. *See also, Littlejohn v. Rose*, 768 F.2d 765 (6th Cir.1985) ("[T]he qualified immunity defense only protects the superintendent in his individual capacity from money damages, not from other forms of relief sought such as reinstatement.... Accordingly, the availability of qualified immunity that would enable an individual defendant to escape individual liability for money damages would not warrant the dismissal of claims against that defendant in his official capacity or against a governmental entity"), *cert. denied* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986); *Patton v. Conrad Area School Dist.*, 388 F.Supp. 410, 418 (D.Del.1975) (holding, prior to *Monell*, that "the only defendants who can be ordered to reinstate a plaintiff and have the power to do so are individual defendants in their official capacities") (citations omitted); *O'Brien v. Galloway*, 362 F.Supp. 901, 906 (D.Del.1973) (refusing to dismiss claim for reinstatement against individuals in their official capacities, but dismissing claim for reinstatement against defendants in their individual capacities, because, "As individuals, Galloway and Hanna are powerless to reinstate O'Brien. It is only in their capacities as Police Commissioner and Mayor, respectively, that they possibly could effect such relief").

7. The plaintiff also relies on *Carrero v. New York City Housing Authority*, 890 F.2d 569 (2d Cir. 1989), for the proposition that the court can order a municipal entity to reinstate a plaintiff when its employee agents have unconstitutionally terminated him or her. There, the court held that the district court's order of reinstatement was proper, because the employer was liable under Title VII for *quid pro quo* sexual harassment by virtue of the actions of one of its agents. *Carrero*, 890 F.2d at 579. However, the court specifically noted that § 1983 provided no remedy against the authority, but only against the individual agent-defendant, because the agent's actions were not attributable to a municipal practice or policy. *Id.* at 576–77.

8. Because this Court should not order reinstatement, for the reasons explained above, it is not necessary to reach the defendants' additional arguments that reinstatement would not be feasible due to HHC's current plans of reorganization which have allegedly curtailed the number of positions at HHC and due to alleged hostility between HHC and the plaintiff.

Circuit held, in a case brought under the Age Discrimination in Employment Act of 1967, that:

> In many cases involving unlawful compulsory retirement the plaintiff can be made whole through an award of back-pay coupled with an order of reinstatement: . . . Reinstatement, however, may not always be possible. For example, there may be no position available for plaintiff at the time of judgment, or, as was the case here, the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation.
>
> Denial of reinstatement in those situations, without an award of reasonable, offsetting compensation, would leave the plaintiff irreparably harmed in the future by the employer's discriminatory discharge, and would permit the defendant's liability for its unlawful action to end at the time of judgment. To prevent this injustice a reasonable monetary award of front pay is necessary as "equitable relief . . . appropriate to effectuate the purposes of [the act]." 29 U.S.C. § 626(b).

*Whittlesey,* 742 F.2d at 728; *see also Frank,* 851 F.Supp. at 93–96.

 The purpose of an award of front pay is to compensate a plaintiff for continuing harm resulting from a wrongful termination. Consequently, front pay is not appropriate when a plaintiff has been fully compensated for all compensable injuries resulting from the defendants' wrongful actions: "After a jury finds § 1983 liability in a loss-of-employment case, the court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall." *Standley,* 5 F.3d at 322; *see also McKnight v. General Motors Corp.,* 973 F.2d 1366, 1369–1372 (7th Cir.1992) (upholding denial of

front pay because, *inter alia,* "the court could have found that the sting of discrimination had ended by the time of trial"), *cert. denied* —— U.S. ——, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); *Barbano v. Madison County,* 922 F.2d 139, 146–47 (2d Cir.1990) (upholding denial of front pay because a finding that the plaintiff had already been made whole was within the district court's discretion); *EEOC v. General Lines, Inc.,* 865 F.2d 1555, 1564–65 (10th Cir.1989) (upholding district court's denial of front pay and court's finding that jury's award of back pay, "although substantially less than that sought," provided full compensation).

The defendants assert that the jury's compensatory damage award of $100,000 was intended to compensate the plaintiff in large measure for back pay, but for no more than two years' worth given that the plaintiff was earning approximately $50,000 per year. The defendants argue that the jury refused to award the plaintiff any further back pay, even though he was terminated more than seven years before the trial, because it concluded either that the plaintiff would not have continued to be employed at HHC for more than two years or that the plaintiff could have obtained comparable employment within two years, but failed adequately to mitigate his damages.[9]

The plaintiff argues that the jury's failure to provide further back pay was a result of its finding other causes for his inability to find work for which the defendants were not liable, such as bad recommendations by other employers. Evidence was introduced at trial of other lawsuits and complaints by Rao against former employers who employed him prior to his employment at HHC and prospective employers from whom he sought work after his employment at HHC. In

---

9. The jury was charged as follows on mitigation of damages:

 Even if you find that the plaintiff was injured as a natural consequence of conduct by the defendants in violation of his constitutional rights, you must determine whether the plaintiff could thereafter have done something to lessen the harm that he suffered. The burden is on the defendants to prove, by a preponderance of evidence, that the plaintiff could have lessened the harm that was done to him, and that he failed to do so. If the defendants

convince you that the plaintiff could have reduced the harm done to him but failed to do so, the plaintiff is entitled only to damages sufficient to compensate him for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him. You should reduce any amount of damages that you find by the amount that the defendants prove by a preponderance of the evidence that the plaintiff could have lessened his damages.

these lawsuits and complaints, Rao alleged that the employers had hindered his efforts to seek employment after his termination from HHC.

Whatever the theory that the jury relied upon, it is clear, given the instructions, that the jury awarded an amount of damages that was sufficient to compensate the plaintiff fully for the actual damages attributable to the defendants' conduct. The jury made an award sufficient to make the plaintiff whole. In determining the equitable relief of front pay, I also conclude that the jury's award was sufficient to make the plaintiff whole and that any further award would have the effect of overcompensating the plaintiff, resulting in a windfall to him.

The most reasonable view of the evidence and of the jury's verdict is that the plaintiff should have obtained another position within two years and that he failed reasonably to mitigate his damages. While the plaintiff testified to having sent out numerous job applications, even for lesser paying jobs and jobs in other geographic areas, he produced little documentation verifying these efforts. Also, he testified that he knew of only a few prospective employers who had actually contacted HHC, and, at his deposition, he did not recall that any agents of prospective employers had ever said that they had spoken to anyone at HHC. It would also be reasonable for the jury to have found that the plaintiff would not have continued in his position for more than two years, because there was credible testimony by the defendants regarding the plaintiff's inability to work effectively with others. If the jury found either that the plaintiff failed to adequately mitigate his damages or that he would have been unlikely to remain employed at HHC for more than two years, then front pay would not be appropriate, because it would result in the over-compensation of the plaintiff.

Even if the jury took into account that the plaintiff's efforts to find employment were hindered by the fact that other former employers refused to give him recommendations or actively hindered his efforts to find new employment, that does not mean that the defendants should pay the plaintiff more to make him whole. The jury was charged to find the amount of money necessary to make the plaintiff whole for the actual damages proximately caused by the unconstitutional conduct. After seven years—even taking into account that others may have contributed to the plaintiff's failure to be able to obtain a job—the award of two years of pay was sufficient to make the plaintiff whole.

Any award of front pay would result in the overcompensation of the plaintiff and is therefore inappropriate. *See Standley,* 5 F.3d at 322; *Barbano,* 922 F.2d at 146–47 (upholding district court's refusal to grant reinstatement or front pay on the ground that, "on this record the denial was tantamount to stating that the relief actually awarded was sufficient to make Barbano whole"). Front pay is only appropriate when a plaintiff continues to suffer uncompensated harm from wrongful termination. In this case, there is no reasonable interpretation of the jury's verdict that is consistent with the assumption that the plaintiff is continuing to suffer harm from the defendants' wrongful conduct. I find that an award of front pay would be inequitable in this case and would overcompensate the plaintiff rather than make him whole.

## VI.

The plaintiff has requested a letter of reference from HHC indicating that he was unconstitutionally terminated from his employment there. Equitable relief is appropriate from the individual defendants to assure that other employers do not deny the plaintiff work on the basis of his termination from HHC. *Cf. Smith v. Secretary of the Navy,* 659 F.2d 1113, 1122 (D.C.Cir.1981) (upholding injunctive relief requiring purging of discriminatory records from personnel file). The parties shall cooperate in the preparation of letters of recommendation in which defendants Japha, Newman, and Weigand will accurately describe the qualifications of the plaintiff. If the parties are unable to agree upon such letters within twenty days, the parties should submit their respective proposals to the Court.

## VII.

For the foregoing reasons, the plaintiff's requests for reinstatement or front pay are hereby denied and the plaintiff's application for prejudgment interest is granted. The plaintiff's request for a letter of recommendation is granted to the extent explained in this opinion.

**SO ORDERED.**