Stanislawa SULKOWSKA, Plaintiff,

v.

The CITY OF NEW YORK, Police Commissioner Howard Safir, Police Officer Charles Daskalakis, and Police Officers "A", "B", and "C", Defendants.

No. 99 Civ.4228 (AGS).

United States District Court, S.D. New York.

April 25, 2001.

John W. Cobb, Cobb & Cobb, Tuxedo, NY, for Stanislawa Sulkowska.

Michael Oliver Hueston, Corporation Counsel City of New York, New York City, for The City of New York, Howard Safir.

Michael D. Hess, Corp. Counsel of the City of New York, New York City, for Charles Daskalakis.

*MEMORANDUM ORDER*

SCHWARTZ, District Judge.

Plaintiff Stanislawa Sulkowska ("plaintiff") filed this action on June 11, 1999 pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state law seeking compensatory and punitive damages arising out of her arrest and detention on June 12 and 13, 1998. On January 24, 2001, this Court found (i) that defendant Officer Charles Daskalakis was liable to plaintiff for false arrest, assault and battery, and malicious prosecution, and (ii) that defendant The City of New York was liable to plaintiff for maintaining a policy and practice that resulted in the violation of plaintiff's constitutional rights. (Opinion and Order dated Jan. 24, 2001 ("January 24, 2001 Opinion and Order") at 65.) The Court awarded plaintiff $275,000 in compensatory damages against defendants, jointly and severally, and $7500 in punitive damages against Officer Daskalakis. (*Id.*) Judgment was entered in such amounts on January 24, 2001. Currently before the Court are plaintiff's motion for attorney's fees, pursuant to 42 U.S.C. § 1988 ("Section 1988") and her motion, pursuant to Fed.R.Civ.P. 59(e) ("Rule 59(e)") to amend the judgment to allow for prejudgment interest. For the reasons set forth below, the motion for attorney's fees is granted in part and denied in part, and the motion for prejudgment interest is denied.

## I. Attorneys Fees [1]

### A. Legal Standard

 In the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), Congress provided that the district court, in its discretion, may allow a prevailing party in a Section 1983 action to recover attorney's fees as an element of costs. *See Bonner v. Guccione*, 178 F.3d 581, 597 (2d Cir.1999). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances ... [and] a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citations and internal quotations omitted); *see also Raishevich v. Foster*, 247 F.3d 337, 344–45 (2d Cir.2001). The amount of the fee shall be determined by the district court on the facts of each case.[2] *Id.*

---

1. Familiarity with the background of this action is presumed. (January 24, 2001 Opinion and Order at 2–15.)

2. The Second Circuit has recognized that in cases where the merits are strong and a probable damage award is high, local counsel would be easily obtained due to the prospect

In the Second Circuit, the lodestar method is used to ascertain reasonable attorney's fees. The lodestar method calculates fees by using the product of the number of hours reasonably expended by each attorney and the reasonable hourly rate. *Pascuiti v. New York Yankees*, 108 F.Supp.2d 258, 266 (S.D.N.Y.2000) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998)); *Gavin–Mouklas v. Info. Builders, Inc.*, No. 97 Civ. 3085, 1999 WL 728636, at *2 (S.D.N.Y. Sept. 17, 1999). The fee applicant bears the burden of documenting the appropriate hours expended and hourly rates, and establishing that they are reasonable. *Pascuiti*, 108 F.Supp.2d at 266; *Hensley*, 461 U.S. at 433, 437, 103 S.Ct. 1933. "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994). In making such determination, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876. "Where the law firm's documentation of hours are inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Documented hours are not "reasonably expended" where the Court finds that such hours were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Marisol A. v. Giuliani*, 111 F.Supp.2d 381,

386 (S.D.N.Y.2000). The court must provide a "concise but clear explanation of the reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

## B. Hourly Rate

"[The][p]laintiff bears the burden of demonstrating that the hourly rates she seeks are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gavin–Mouklas*, 1999 WL 728636, at *2 (citations and internal quotations omitted). Because this action took place in the Southern District of New York, the pertinent rates are those of attorneys in this district with reasonably comparable skill and experience for similar litigation. *Id.* (citing *Polk v. New York State Dep't of Correctional Serv.*, 722 F.2d 23, 25 (2d Cir.1983)). The plaintiff is also entitled to seek fees for paralegal services. *Marisol A.*, 111 F.Supp.2d at 386 (citing *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir.1989)).

In this case, plaintiff's attorneys, from the Cobb & Cobb law firm in Tuxedo, New York (the "Cobb firm"), were John W. Cobb ("John Cobb") and Verna W. Cobb ("Verna Cobb"), with Stephen Cobb serving as paralegal. Plaintiff contends that the reasonable hourly rate for both John Cobb and Verna Cobb is $250/hr, and that the appropriate rate for Stephen Cobb is $95/hr. In support of her fee application, plaintiff has submitted (i) affir-

---

of a significant contingency fee, and thus an award of attorneys' fees would not further the statutory purpose. *See Raishevich*, 247 F.3d at 344–45 (citing *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982)). The determination of whether such "special circumstances" warrant a denial of attorney's fees involves an initial determination of whether "the plain-

tiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained." *Id.* Because the Court finds that the instant case does not satisfy this test, it declines to deny fees on the ground that such "special circumstances" are present.

mations from John Cobb and Verna Cobb, detailing their relative educational and professional experience and the Cobb firm's billing practices, and (ii) affidavits from two outside attorneys who are professional acquaintances of the Cobbs, Stuart R. Shaw and Joseph P. Ferri, Jr., who support the requested hourly rate based on their own billing rates and familiarity with the quality of the Cobbs' work. (Affirmation of John W. Cobb dated Feb. 5, 2001 ("John Cobb Aff.")); Affirmation of Verna W. Cobb in Support of Application for Attorney's Fees dated Feb. 2, 2001 ("Verna Cobb Aff."); Affidavit of Stuart R. Shaw dated Feb. 2, 2001 ("Shaw Aff."); Affidavit of Joseph P. Ferri, Jr. dated Feb. 2, 2001 ("Ferri Aff."). Defendants contend that the level of civil rights litigation experience of John and Verna Cobb do not justify an hourly rate of $250; they suggest a rate of $150/hr. (Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Application for Attorneys Fees ("Def.Mem.") at 8–9.) The Court agrees that the requested fee is too high, but disagrees with defendants as to the appropriate rate. The Court's research reveals that the applicable hourly rate for experienced civil rights litigators in small firms to be between $200/hr and $300/hr, with $250/hr being the most commonly awarded rate to those with significant experience in the area. *See Pascuiti*, 108 F.Supp.2d at 266–67 (citing cases); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427 (2d Cir.1999) (finding "considerable support" for the district court's determination of a rate of $225 per hour for an experienced civil rights practitioner, who had been practicing law for approximately twenty years); *cf. Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d

1053, 1059 (2d Cir.1989) (stating that "smaller firms may be subject to their own prevailing market rate"). While the record reflects that John and Verna Cobb are experienced litigators, plaintiff's submissions fail to demonstrate that either has extensive experience in civil rights litigation. (John Cobb Aff. ¶¶ 4–7, Attachment; Verna Cobb Aff. ¶¶ 4–6, Attachment.) Moreover, while sworn statements by professional acquaintances of the Cobbs are based in part on their own experience at small law firms, such anecdotal evidence does not outweigh the results of this Court's research and its own experience, which leads it to the conclusion that $200/hr is a reasonable rate in this case.[3] *See Lawson v. City of New York*, No. 99 Civ. 10393, 2000 WL 1617014, at *4 (S.D.N.Y. Oct. 27, 2000) (finding that award of $225/hr was reasonable for experienced litigator who was litigating his first civil rights case); *Gavin–Mouklas*, 1999 WL 728636, at *5–6 (awarding fees based on attorney's $200 hourly rate where attorney's experience in employment litigation was "significantly less than her thirty years out of law school suggest"); *Luciano v. Olsten Corp.*, 925 F.Supp. 956, 963 (E.D.N.Y.1996) (finding that $225 hourly rate was reasonable for a partner at a small firm with employment law experience who achieved a favorable verdict after a month long trial); *cf. Pascuiti*, 108 F.Supp.2d at 267 (citing *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.1987)) ("[W]e do not share the view . . . that a district judge may not rely in part on the judge's own knowledge of private firm hourly rates in the community.")

---

**3.** The Cobb firm's invoice seeks fees for certain tasks that are not attributed to a specific lawyer but are billed at the attorney or paralegal rate. (Invoice at 3, 7, 15, 20, 21, 24.)

The Court assumes that the unlabeled attorney tasks were completed by John Cobb and that Stephen Cobb completed the paralegal tasks.

■ Defendants further contend that the $95 hourly rate for Stephen Cobb is excessive, relying on a case from this district where the court found that $75/hr was a reasonable rate for paralegals. (Def. Mem. at 10 (citing *Marisol A.,* 111 F.Supp.2d at 388)). The Court disagrees. Although plaintiff failed to provide a description of Stephen Cobb's educational background or experience, it is clear to the Court that he has a high level of legal experience for a paralegal. While Stephen Cobb apparently lacks a law degree, his role throughout the litigation was more akin to an associate or co-counsel. He performed research, drafted pleadings and briefs, assisted John Cobb at pretrial conferences and depositions, and was responsible for the generation and maintenance of the documentary record used by plaintiff at trial. (*See* Invoice from Cobb & Cobb to Plaintiff dated Feb. 6, 2001 ("Invoice"), Ex. A to John Cobb Aff.) In this district, the rate of $95/hr is reasonable for experienced paralegals or junior associates. *See, e.g., Rodriguez v. McLoughlin,* 84 F.Supp.2d 417, 427 (S.D.N.Y.1999) (awarding paralegals between $75/hr and $130/hr depending on experience); *Marisol A.,* 111 F.Supp.2d at 387 (citing cases where associates' hourly rates of $175 to $265 were deemed reasonable based on experience); *id.* at 387–89 (setting junior attorney rate minimum at $130/hr, and setting paralegal rate between $75/hr and $110/hr based on experience); *cf. Gavin–Mouklas,* 1999 WL 728636, at *7 (approving $90/hr rate for law students as reasonable).[4]

## C. Number of Hours Reasonably Expended

Plaintiff seeks reimbursement for approximately 440 hours of work performed

by the Cobb firm. (Invoice at 24.) Defendants make a number of specific objections to the hours billed by the firm.

### 1. Duplicative Billing

■ Defendants point to certain instances where the Cobb firm billed for duplicative time, and for conference time when a conference was not held. First, John Cobb billed 5 hours for his own attendance at pretrial conferences on August 28, 1999 and August 30, 1999. (Invoice at 2–3.) However, the records of the Court do not indicate that either conference occurred; the Court therefore eliminates those 5 hours. Second, there are duplicate entries, of 2 hours and 1 .75 hours each, for John and Stephen Cobb's attendance at the November 29, 2000 pretrial conference. The Court eliminates the first two entries for such conference (2 hours each), because they lack the detail provided in the latter two entries. (*Id.* at 19.) Third, on March 6, 2000, Stephen Cobb billed 11.50 hours for the preparation of three deposition subpoenas and the service of two such subpoenas. This activity is broken down into two separate events of 7.25 hours and 4.25 hours. In addition to the duplicative billing implicated here, the Court finds that an allocation of 11.50 hours for the claimed tasks is excessive. Accordingly, the Court eliminates the second entry of 4.25 hours. (*Id.* at 9.) Moreover, the two billing entries for Stephen Cobb on December 5, 2000, for 5 hours and 3.75 hours, both involve the service of subpoenas on the same witnesses. The first entry also includes time expended in obtaining the Court's signature for two of the subpoenas. Because obtaining the Court's signature on the subpoenas took very little time, the

---

4. As defendants point out, in certain instances work performed by Stephen Cobb is billed at $250/hr. (Def. Mem. at 10, 20; Invoice at 7,

8, 20.) The Court reduces such entries to $95/hr, in accordance with the above.

Court finds these entries duplicative, and eliminates the second entry of 3.75 hours.[5] (*Id.* at 20.) Fourth, there are two entries on December 8, 2000 for "Preparation of final witness and exhibits lists;" although the second of the two entries is attributed to John Cobb, each is billed at Stephen Cobb's rate. The Court eliminates the second entry of 5 hours. (*Id.* at 22.)

■ The Court declines to reduce the Cobb firm's billable time, at defendants' request, for (i) certain allegedly "unnecessary billing" in connection with plaintiff's motion for leave to amend her complaint and plaintiff's first set of interrogatories, and (ii) certain allegedly "excessive billing" in connection with plaintiff's motion for summary judgment, pre-trial statement of claims, and post-trial memorandum on damages. (Def. Mem. at 15–20.) These expenditures of time, which were billed primarily by Stephen Cobb, were reasonably expended given the novel and complex matters implicated by the case. *See Hensley,* 461 U.S. at 429–30 n. 3, 103 S.Ct. 1933 (listing several factors which may be considered by the court in determining the appropriate fee, including (i) the time and labor required, (ii) the novelty and difficulty of the questions, and (iii) the skill requisite to perform the legal service properly).

## 2. Overstaffing

■ Defendants claim that Stephen Cobb's attendance at pretrial conferences and depositions amounted to overstaffing, and hence should be excluded from the fee application. (Def. Mem. at 12, 20–24.) The Court disagrees. As noted *supra,* Stephen Cobb was an integral member of the Cobb firm, and was, as far as the Court can tell, an indispensable participant on plaintiff's trial team. As defendants themselves ac-

knowledge, Stephen Cobb acted "as if he was his father's partner, rather than his paralegal." (*Id.* at 21.) Yet defendants repeatedly emphasize that Stephen Cobb is not licensed to practice law and contend that he was "in essence, an administrative assistant." (*Id.* at 22 ("Had Stephen Cobb been a member of the Bar, his presence at the pretrial conferences might have been substantive, and arguably necessary to protect the client's interest and to advance the case.").) However, in the Court's view, despite his lack of certification as an attorney, Stephen Cobb's presence at each of the cited conferences and depositions was not only important, but essential to plaintiff's prosecution of her case. Accordingly, the Court declines to exclude Stephen Cobb's attendance at such events from the fee calculation in this case.

## 3. Clerical Tasks

■ Defendants contend that the Cobb firm's clerical and administrative charges should be excluded from the fee application. (Def. Mem. at 24–26.) Courts of this Circuit have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients. *Marisol A.,* 111 F.Supp.2d at 390 (citing *Williams. v. New York City Hous. Auth.,* 975 F.Supp. 317, 324 (S.D.N.Y. 1997)); *Bridges v. Eastman Kodak Co.,* No. 91 Civ. 7985, 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996) (stating that secretarial tasks, such as filing, delivery, and service of papers do not properly come under the heading of hours expended on the litigation, and are not generally considered recoverable expenditures of time); *Society for Good Will to Retarded Children v. Cuomo,* 574 F.Supp. 994, 999 (E.D.N.Y.1983), *vacated on other grounds,*

---

**5.** Contrary to defendants' suggestion, the Court finds that the hours billed by John Cobb for time for reviewing and revising interroga-

tory answers on November 11, 1999 were reasonably expended. (Def. Mem. at 15; Invoice at 4.)

737 F.2d 1253 (2d Cir.1984) ("Filing, delivery, and service of papers 'are not generally considered recoverable expenditures of time.'"). *But see Pascuiti*, 108 F. Supp.2d at 267 (ordering that "faxing, filing, photocopying, and drafting affidavits of service" should be compensated at $50/hr) (citing *Luciano*, 925 F.Supp. at 966 (finding that certain non-legal work that might be performed by an associate at a large firm, namely, *cite checking, file organization, telephone calls to the Clerk of the Court, and proofreading* should be compensated at $50/hr) (emphasis added)). The Court disagrees with defendants that the Cobb firm's preparation of trial exhibits should be excluded as a clerical expense, given the amount of organization required and the fact that such assembly required a substantial understanding of the case. (Def. Mem. at 19); *Marisol A.*, 111 F.Supp.2d at 390. However, the Court finds that certain administrative tasks which are not ordinarily recoverable should be not included in the fee application. *Marisol A.*, 111 F.Supp.2d at 390 (citing *Broome v. Biondi*, 17 F.Supp.2d 230, 236 (S.D.N.Y.1997)). The Court eliminates the hours expended on those tasks which are purely administrative, including filing, photocopying, mailing, faxing, and service of papers.[6] (Def. Mem. at 24–26; Invoice at 1–3, 5–7, 10–12, 14–18, 21, 23–24.) The total number of hours thereby eliminated is 21.5. (*Id.*)

### 4. Travel Time

■■■■■■ Defendants assert that the Cobb firm did not bill travel time separately from other activities, and contend the hours expended on travel should be reduced to 50 percent of the relevant attorney's regular hourly rate. (Def. Mem. at 26–27.) Although courts in this district customarily apply such reduction to travel expenses, it is within the Court's discretion to compensate counsel for travel time at full hourly rates. *See Wilder v. Bernstein*, 975 F.Supp. 276, 283 (S.D.N.Y.1997) (citing *Jennette v. City of New York*, 800 F.Supp. 1165, 1170 (S.D.N.Y.1992)). While the Court acknowledges that travel time is less productive than regular time, *see Pascuiti*, 108 F.Supp.2d at 271, it declines to apply the travel time reduction here. The Cobb firm only billed for travel time where its lawyers attended a conference, hearing, or deposition, which affects few entries. (Invoice at 2, 3, 5, 6, 7, 11, 13, 17, 19, 21.) Moreover, given that plaintiff hired a firm located outside of Manhattan, it would be reasonable to expect the firm to bill plaintiff for lawyers' travel to and from the city to attend conferences and depositions. Accordingly, the Court awards full fees to plaintiff for the travel time of her counsel.

### 5. Costs

■■■■■■ It is well-settled in this Circuit that "attorney's fees awards include those

---

**6.** The excluded hours include: (i) each of the entries listed in defendants' opposition brief at pages 24 to 26, with the exception of the entry on November 30, 2000 for on-line research charges, which is considered *infra*; (ii) the second June 11, 1999 entry, "Serve summons and complaint on corporation counsel, police commissioner Howard Safir, and Charles Daskalakis"; (iii) the March 21, 2000 entry, "Serve deposition subpoena on Lt. Timothy Ferguson" (Coney Island police precinct); (iv) the May 4, 2000 entry, "Serve by hand plaintiff's supplemental responses to de-

fendants' interrogatories and requests for production to corporation counsel's office"; and (v) the December 22, 2000 entry, "Copy and serve plaintiff's Reply Memorandum re: plaintiff's post-trial memorandum (to Judge Schwartz and corporation counsel via fax)." (Def. Mem. at 24–26; Invoice at 2, 10–11.) The Court reduces to .25 hour, rather than eliminates, the first entries for August 7 and 10, 2000, because preparation of a cover letter is compensable and, according to other entries, takes .25 hour to complete. (Invoice at 14–15.)

reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). Such expenses charged to clients may include express mail, long distance telephone, local travel, and messenger services. *Gavin–Mouklas,* 1999 WL 728636, at *3. Here, defendants challenge plaintiff's itemized costs for on-line research and trial transcripts. (Def. Mem. at 28–29; Costs Invoice from Cobb & Cobb to Plaintiff dated Feb. 6, 2001 at 2–3.) "It is well-established that 'computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *Marisol A.,* 111 F.Supp.2d at 402 (quoting *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir.1996)). Accordingly, the Court eliminates $594.69 in on-line research expenses from plaintiff's counsels request for costs. Defendants' objection to charges for the trial transcript in this case is without merit.[7] Such transcript costs are compensable and may have assisted counsel in preparing plaintiff's post-trial submissions. *See Lawson,* 2000 WL 1617014, at *5 (finding that plaintiffs' requests for transcript costs were reasonable under the circumstances of the case).

## 6. Fee Calculation

In accordance with the above, and on the basis of a lodestar calculation, the Court grants plaintiff's motion for attorney's fees in the amount of $58,419.66, reflecting $55,839.95 in attorney's fees and $2,579.71 in costs.[8] This total reflects 162.92 billable hours by John Cobb ($32,-584.00), 10.16 billable hours by Verna Cobb ($2032.00), and 223.41 billable hours by Stephen Cobb ($21,223.95).

## II. Prejudgment Interest

Plaintiff moves, pursuant to Rule 59(e), to amend the judgment to allow for prejudgment interest on the damages awarded as redress for her Section 1983 false arrest claim.[9] (Plaintiff's Memorandum of Law on Prejudgment Interest at 1–6.) "In a suit to enforce a federal right,

---

7. The only case that defendants cite for their contention that transcript costs must be excluded, *Ciraolo v. City of New York,* No. 97 Civ. 8208, 2000 WL 1521180, at *4 (S.D.N.Y. Oct. 13, 2000), dealt with deposition transcript costs.

8. The Court notes that any contingencies resulting from the complexity of the lawsuit, or from the fact that plaintiff retained the Cobb firm's services on a contingent fee basis, are included in the lodestar calculation and do not merit an upward adjustment in fees. *See Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir.1997) (stating that considerations of the contingent nature of the lawsuit was subsumed within the lodestar calculation); *see also City of Burlington v. Dague,* 505 U.S. 557, 562–66, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (stating that contingency factor cannot lead to upward adjustment of fee); *Blum v. Stenson,* 465 U.S. 886, 901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (stating that "any up-

ward adjustment for the contingent nature of the litigation," based on the presence of novel issues, was unjustified).

9. Plaintiff does not move for prejudgment interest on the damages she received on her state law claims. As plaintiff herself acknowledges, (Plaintiff's Memorandum of Law on Prejudgment Interest at 2–3), such interest would likely be precluded by statute. *See* N.Y. Civ. Prac. L. & R. § 5001 (McKinney's 2000) (specifying that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property . . . ."); *cf. Rodick v. Schenectady,* 856 F.Supp. 105, 106 (N.D.N.Y.1994) (finding that compensatory damages awarded on a claim for malicious prosecution were not entitled to prejudgment interest under New York law).

the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Gierlinger*, 160 F.3d at 873. When determining whether prejudgment interest is appropriate in a particular case, the Court must consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (citations omitted). In addition, "[t]he speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded." *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 836 (2d Cir.1992). The Court must also bear in mind that "[t]he underlying purpose of prejudgment interest . . . is the need to fully compensate the wronged party for actual damages suffered, i.e., to make him whole." *Thomas v. City of Mount Vernon*, No. 89 Civ. 0552, 1992 WL 84560, at *3 (S.D.N.Y. Apr. 10, 1992); *see also Wickham*, 955 F.2d at 834 (stating that the "current 'equitable' and discretionary rule" governing the award of prejudgment interest in federal cases is "based on the need for full compensation and fairness under the circumstances" and that "awards of prejudgment interest must not result in over-compensation of the plaintiff"). On the basis of such considerations, courts of this Circuit have allowed recovery of prejudgment interest under numerous federal laws, including Section 1983. *See Gierlinger*, 160 F.3d at 873 (awarding prejudgment interest for lost wages on Section 1983 claim); *Miner v. City of Glens Falls*, 999 F.2d 655, 662 (2d Cir.1993) (same); *Rao v. New York City Health and Hospitals Corp.*, 882 F.Supp. 321, 325–26 (S.D.N.Y.1995) (same, and stating that

prejudgment interest is especially appropriate in circumstances where the plaintiff has been deprived of wages); *see also Wickham*, 955 F.2d at 834–35 (citing cases).

 In this case, the Court finds that the award of prejudgment interest is not warranted. The Court's award of compensatory damages, on plaintiff's Section 1983 claim as well as her state law claims, was based exclusively on "the emotional injuries that plaintiff [ ] sustained as a result of her arrest." (January 24, 2001 Opinion and Order at 62.) Plaintiff sustained no economic injury as a result of defendants' actions; she was not, for instance, deprived of money that she would otherwise have earned but for defendants' wrongdoing, as in an employment termination case. *See, e.g., Gierlinger*, 160 F.3d at 873; *Miner v. City of Glens Falls*, 999 F.2d at 662; *Rao*, 882 F.Supp. at 325–26. Moreover, the amount of damages was not ascertainable with any precision either at the time of the wrongdoing or at the time of trial or judgment. *Thomas v. City of Mount Vernon*, No. 89 Civ. 0552, 1992 WL 84560, at *3–4; *cf. McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 882 (S.D.N.Y.1995) ("An award of compensatory damages for pain and suffering . . . is not so easily calculated and represents the jury's translation into monetary terms a loss that is difficult to quantify. It is not easily divided into specific periods like back pay and it does not represent an amount that the defendant has withheld from the plaintiff in the same way that awards in contract or property actions do.") In determining a precise monetary figure which would compensate plaintiff for the emotional injuries she suffered as a result of her arrest and subsequent incarceration, the Court intended to fully compensate plaintiff for such injuries. Under such circumstances, an award of prejudgment interest would

not be compensatory, but punitive, which is an improper purpose. *United States v. Seaboard Surety Co.*, 817 F.2d 956, 966 (2d Cir.1987) (noting that the purpose of prejudgment interest is compensatory, not punitive). In sum, taking into account the unliquidated and inherently speculative nature of the damage award, the fact that plaintiff has been adequately compensated by the Court's judgment, and the fairness and equities involved in the award, plaintiff's motion for prejudgment interest is denied.

### III. Conclusion

For the foregoing reasons, plaintiff's motion for attorney's fees is granted in part and denied in part, and her motion for prejudgment interest in denied. Defendants are liable to plaintiff, jointly and severally, for attorney's fees in the amount of $58,419.66.

SO ORDERED.