**Harold J. CONNOR, Plaintiff,**

v.

**Henry A. ULRICH, individually and in his capacity as a police officer, Defendant.**

No. 99–CV–2541(ADS).

United States District Court, E.D. New York.

July 23, 2001.

Muraca & Kelly, L.L.P., Mineola, NY, By Felice J. Muraca, of Counsel, Dennis J. Kelly, of Counsel, for the Plaintiff.

Carole A. Burns & Associates, Mineola, NY, By Alan J. Reardon, of Counsel, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the plaintiff, Harold J. Connor ("Connor" or the "plaintiff"), brought a Section 1983 action against Nassau County, a Nassau County Police Officer, Henry A. Ulrich ("Ulrich" or the "defendant"), and a Nassau County Police Sergeant, John O'Keefe ("O'Keefe") alleging violations of his constitutional due process and equal protection rights as well as violations of state law. The jury returned a verdict in favor of Connor on his Section 1983 excessive force claim against Ulrich, and awarded him $210,750 in compensatory damages and $1.00 in punitive damages. Presently before the Court is Connor's application for attorney's fees and his request for an amendment of the judgment under Fed.R.Civ.P. 59(e).

## I. BACKGROUND

The plaintiff claimed that on May 2, 1996, he was driving his car west on the Grand Central Parkway, near the Inter Boro Parkway exchange when he was pulled over by Police Officer Ulrich. Connor claimed that during the stop of his vehicle, Ulrich kicked him, slammed him against the car, and then arrested him. Connor further claimed that as a result of Officer Ulrich's conduct, he suffered physical injuries that required surgery and hospitalization. In particular, he suffered a broken eye socket, nose, and jaw, and multiple lacerations. Connor further claimed that Officer Ulrich and Sergeant O'Keefe prepared false police reports, and that as a result of the police officers' conduct, he was required to appear in Nassau County District Court on several occasions as an accused criminal.

Connor initiated this Section 1983 action on May 3, 1999, alleging, among other things assault, battery, abuse of process, excessive force, malicious prosecution, and intentional infliction of emotional distress, in violation of his First, Fourth, Fifth, and Fourteenth Amendment rights.

As noted, the case proceeded to trial, and at the close of the defendants' case, the Court heard the arguments of the parties in support of their respective Rule 50 motions for judgment as a matter of law. The Court dismissed the claims against Nassau County on the ground that the plaintiff had not put forth sufficient proof to show that Nassau County had a custom or policy to encourage, allow, or ignore excessive beating or the use of excessive force. The Court also dismissed the claims against Sergeant O'Keefe, as well as the state-law claims. The jury returned a verdict in favor of the plaintiff on the Section 1983 "excessive force" claim and in favor of the defendant on the Section 1983 "malicious abuse of process" claim. The jury awarded Connor the sum of $150,000 for his physical injuries, emotional distress, and pain and suffering; $25,750 for past and future medical expenses; $35,000

for loss of earnings; and $1.00 in punitive damages.

Connor now moves for attorney's fees under the provisions of 42 U.S.C. § 1988 and for an amendment of the judgment under Fed.R.Civ.P. 59(e) to provide for an award of pre-judgment interest. Specifically, the plaintiff seeks the sum of $51,375 in attorney's fees; an additional $3,798 for disbursements and expert witness fees; and $1,125 for travel time. This attorney's fee request is comprised of the following separate claims:

| | | |
|---|---|---|
| Dennis J. Kelly, Esq.: | 106.25 hours at $250 per hour = | $26,562.50 |
| Felice J. Muraca, Esq.: | 99.25 hours at $250 per hour = | $24,812.50 |

Total hours: 205.5 Total fee requested: $51,375.00

The defendant raises several challenges to the present request for attorney's fees, including arguments that the requested hourly rates are excessive; that hours for duplicative work should be reduced; and that counsel's performance of "non-legal" tasks deserves compensation at a reduced rate. The defendant also asserts that the plaintiff's request for expert fees must be denied. In addition, the defendant challenges the request for pre-judgment interest, claiming that it is not applicable in the present case.

## II. *DISCUSSION*

### A. As to Attorney's Fees, Costs, and Disbursements

■ A prevailing party in a case brought pursuant to 42 U.S.C. § 1983 may be awarded reasonable attorney's fees. 42 U.S.C. § 1988(b). Because of the district court's familiarity with the quality of the representation and the extent of the litigation, the decision whether to award fees and the amount of fees awarded are issues generally confined to the sound discretion of the court. *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998). The well-known formula for calculating attorney's fees is the "lodestar" method described in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Under this method, the court makes an initial calculation of a lodestar amount by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763–64 (2d Cir. 1998); *Gierlinger,* 160 F.3d at 876; *Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir.1997). If the court finds that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours from its lodestar calculation. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Luciano,* 109 F.3d at 116. Once the initial lodestar calculation is made, the court should then consider whether upward or downward adjustments are warranted by factors such as the extent of success in the litigation and the degree of risk associated with the claim. *Hensley,* 461 U.S. at 434 & n. 9, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974)).

In this case, the Court finds that the plaintiff is a prevailing party and is entitled to an award of his reasonable attorney's fees under 42 U.S.C. § 1988.

■■ In making the initial lodestar calculation, the Court finds that the hourly rates requested by Connor's counsel are excessive. The rate to be used in the calculation must be the rate "prevailing in

the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano,* 109 F.3d at 111 (citing *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). Here, both Kelly and Muraca request that the Court apply a rate of $250 per hour to all of the claimed hours worked by each attorney. However, the Second Circuit has recently held that rates of $200 for partners, $135 for associates, and $50 for paralegals are reasonable rates for legal services in the Eastern District. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d. Cir. 1998); *Luciano,* 109 F.3d at 111–112 (collecting cases); *see also Association for Retarded Citizens v. Thorne,* 68 F.3d 547, 554 (2d Cir.1995); *Cruz v. Local Union No. 3, Int'l. Brotherhood of Electrical Workers,* 34 F.3d 1148, 1160 (2d Cir.1994). The Court will apply the rates approved by the Second Circuit in the Eastern District in making the initial lodestar calculation.

Both Kelly and Muraca prepared the case for trial, visited the scene, conducted the investigations, and were present in the courtroom. This case, however, was a garden-variety Section 1983 case. Given that the case involved no novel issues of law or complex documentary evidence, the Court finds that the overstaffing of the case by the plaintiff is unreasonable. At most, the trial of plaintiff's claims required the services of one partner and one associate. Accordingly, the Court will apply a partner rate to the hours submitted by Kelly, and an associate rate to the hours submitted by Muraca.

Further, in response to Muraca's claim for travel time, "[a]lthough it is within the Court's discretion to compensate counsel for travel time at full hourly rates, courts in this circuit customarily reimburse attorney's for travel time at fifty percent of their hourly rates." *Wilder v. Bernstein,* 975 F.Supp. 276, 283 (S.D.N.Y.1997); *see also Jennette v. City of New York,* 800 F.Supp. 1165, 1170 (S.D.N.Y.1992). This Court will follow that custom and in this case the plaintiff's counsel will be awarded the sum of $67.50 per hour for Muraca's travel time.

Next, the Court must determine the number of hours that were reasonably expended in this litigation. Upon reviewing the time sheets submitted by the plaintiff's attorney, and based upon this Court's own knowledge of issues tried in the case, the Court concludes that some of the pre-trial preparation hours billed by both Kelly and Muraca are excessive and duplicative. In particular, both attorneys reviewed the same I.A.U. report—Muraca for 5.25 hours and Kelly for approximately 10 hours. The Court finds that a 30% reduction in the number of hours Kelly spent reviewing the I.A.U. report is a reasonable adjustment so as to prevent billing for redundant services.

In addition, the Court finds the total number of pre-trial hours submitted by Muraca is not the sum of the itemized hours he lists. The sum, when added properly, equals 51.75 hours, not 54.75 hours. The Court reduces the number of hours accordingly.

Based on these findings, the Court determines that the initial lodestar calculation should be as follows:

| | | |
|---|---|---|
| Pre–Trial: | 54.75 hours at $200 (Kelly) | = $ 10,950 |
| | 51.75 hours at $135 (Muraca) | = $ 6986.25 |
| Trial Time: | 48.5 hours at $200 (Kelly) | = $ 9700 |
| | 43.5 hours at $135 (Muraca) | = $ 5872.50 |
| | 9 hours at $67.50 (Muraca Travel Time) | = $ 607.50 |
| | Total Fee Awarded | = $ 34,116.25 |

However, as the Supreme Court in *Hensley*, 461 U.S. at 434 & n. 9, 103 S.Ct. 1933, observed, calculation of the lodestar figure "does not end the inquiry." The defendant has requested a reduction of the lodestar figure to reflect that the Court dismissed all claims against defendants O'Keefe and Nassau County and all state-law claims; and that the jury found in favor of defendant Ulrich on one of the two Section 1983 claims. The Court agrees that a reduction is warranted for the plaintiff's failure to demonstrate that Nassau County and O'Keefe had any culpability. Therefore, the Court finds that a general lodestar reduction of 10% is appropriate to reflect the lack of complete success achieved by the plaintiff.

With regard to the plaintiff's costs and disbursements, there being no objection to the plaintiff's request to be reimbursed for expenses in the sum of $1048, the Court finds an award of this amount to be reasonable. The plaintiff also requests the sum of $2750 as reimbursement for expert medical testimony. However, Section 1988 does not "convey the authority to shift experts fees to the losing party." *Wilder*, 975 F.Supp. at 287 (noting that although the Civil Rights Act of 1991 amended 42 U.S.C. § 1988 to give courts discretion to award expert fees in Section 1981 cases, it did not extend that discretion to Section 1983 cases) (citing *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 102, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)). Because the Court lacks the authority to reimburse for expert fees, the plaintiff's request for them is denied.

In accordance with the foregoing, and on the basis of the lodestar calculation, the Court grants the plaintiff's motion for attorney's fees in the amount of $31,752.62, reflecting $30,704.62 in attorney's fees and $1048 in costs. This total reflects 103.25 billable hours by Kelly (103.25 hours × $200) and 95.25 billable hours by Muraca (95.25 hours × $135).

## B. As to Prejudgment Interest

The plaintiff also moves, pursuant to Fed.R.Civ.P. 59(e) to amend the judgment to include prejudgment interest. Although Section 1983 does not specifically provide for prejudgment interest, "[i]n a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Gierlinger*, 160 F.3d at 873. In determining whether a discretionary award of prejudgment interest is warranted, the Court must consider: "(1) the need to fully compensate the wronged party for actual damages suffered, (2) considerations of fairness and the relative equities of the award, (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Local Union No.3 Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 833 (2d Cir.1992). The Court should also be mindful that the underlying purpose of prejudgment interest is to fully compensate the plaintiff, or to make him whole. *Sulkowska v. City of N.Y.*, 2001 WL 428253 *6 (S.D.N.Y. Apr.25, 2001).

However, awards of prejudgment interest must not result in overcompensation. *Wickham Contracting*, 955 F.2d at 834. Applying these principles to various cases brought pursuant to Section 1983, courts of this Circuit have permitted recovery of pre-judgment interest for claims involving lost wages. *See Sulkowska*, 2001 WL 428253 *6 (suggesting that prejudgment interest should only be permitted on compensatory damages awards) (citing *Gierlinger*, 160 F.3d at 873; *Miner v. City*

*of Glens Falls,* 999 F.2d 655, 662 (2d Cir. 1993); *Wickham,* 955 F.2d at 834–35; *Rao v. New York City Health and Hospitals Corp.,* 882 F.Supp. 321, 325–26 (S.D.N.Y. 1995)).

 Here, the jury awarded Connor the sum of $8000 for the reasonable value of his medical expenses to date and the sum of $35,000 for his loss of earnings. The Court finds that this award of $43,000 for past medical expenses and loss of earnings is a specific, ascertainable sum that represents an economic injury. *See, e.g., Gierlinger,* 160 F.3d at 873; *Miner,* 999 F.2d at 662; *Sulkowska,* 2001 WL 428253 *6; *Rao,* 882 F.Supp. at 325–26. Thus, in order to fully compensate the plaintiff for these actual damages, the Court awards prejudgment interest on the sum of $43,000, which interest should be calculated from May 26, 1996. In the absence of any other evidence as to the proper rate of pre-judgment interest, the Court finds that such interest should be determined on the basis of the rate of the average of annual interest paid on the one-year United States Treasury bill during the applicable period. *See Jones v. UNUM Life Ins. Co. of America,* 223 F.3d 130, 139–40 (2d Cir. 2000).

[13] However, the other damages pertain to Connor's physical injuries, pain, and suffering, and the reasonable value of the medical expenses he will incur in the future. These damages are intended to fully compensate the plaintiff for those respective injuries, and an award of pre-judgment interest under these circumstances would be punitive rather than compensatory. *See Sulkowska,* 2001 WL 428253 *6 (citing *United States v. Seaboard Surety Co.,* 817 F.2d 956, 966 (2d Cir.1987)). Accordingly, the Court declines to award prejudgment interest on the remaining sum.

### III. CONCLUSION

Having reviewed the submissions of the parties and based on the foregoing, it is hereby

**ORDERED** that the plaintiff, as a prevailing party, is entitled to an award for attorney's fees in the sum of $30,704.62 and reimbursement for disbursements in the sum of $1048; and it is further

**ORDERED** that the Clerk of the Court is directed to include these sums in the judgment to be entered in this case; and it is further

**ORDERED** that the Clerk of the Court is directed to calculate the prejudgment interest on the compensatory damages award of $43,000, from May 26, 1996, on the basis of the rate of the average of annual interest paid on the one-year United States Treasury bill during the applicable period.

**SO ORDERED.**