Ardita DAJBABIC, Plaintiff,

v.

RICK'S CAFÉ and Joseph
Aliotta, Defendants.

No. 12–cv–2808 (NG)(RLM).

United States District Court,
E.D. New York.

Feb. 6, 2014.

Matthew J. Blit, Justin Stedman Clark, Levine & Blit, PLLC, New York, NY, for Plaintiff.

Michael K. Chong, Hoboken, NJ, for Defendants.

## OPINION & ORDER

GERSHON, District Judge:

This is an action brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law (the "NYLL"), § 190 *et seq.* When this case was initiated, the plaintiff was employed full-time by the office of plaintiff's attorney. Plaintiff had, however, also worked several shifts as a waitperson (or waitperson-in-training) at the restaurant owned by defendants, but she was never paid for those shifts. After an excessive degree of litigation, the parties ultimately agreed to settle the matter for a payment of $2,000 to plaintiff, with the issue of attorney's fees to be decided by the court. *See* Order of August 7, 2013 (the "Aug. 7 Order"). Plaintiff now seeks statutory attorney's fees of $41,020, plus costs totaling $4,632. I have already determined that fees incurred after February 12, 2013 are not to be included in the reasonable fee award. *See id.* at 1.

Defendants do not challenge the availability of reasonable attorney's fees and costs under the FLSA, but they argue for substantial reductions from the amounts requested.

## DISCUSSION

*Success Achieved by Counsel for Plaintiff*

While the degree of success achieved by the attorney in a statutory

fees case is often described as the most critical factor in determining the reasonable fee, the fee need not be proportionate to the success, and fee awards far greater than the damages awarded may be found reasonable. *See Kalloo v. Unlimited Mechanical Co. of NY, Inc.*, 977 F.Supp.2d 209, 210–11 2013 WL 6662557, at *1 (E.D.N.Y., December 18, 2013).

■ Here, counsel for plaintiff boasts that he achieved a $2,000 settlement award for his client—who worked at most four or five shifts at defendants' restaurant. But, he neglects to consider that his initial complaint, which was brought as a collective action, included retaliation and other claims for which he sought damages of $58,000, plus additional damages as set forth in plaintiff's initial disclosures of October 22, 2012,[1] and that neither the collective action nor the claims supporting these significant damages were pursued.[2] Moreover, these claims may have had the effect of prolonging the litigation, as their inclusion in the complaint may have provided an incentive for defendants, the owners of a very small restaurant, to litigate more strenuously than they might have deemed necessary if they had been confronted with damages of a more realistic amount. In any event, although it is clear that plaintiff's counsel achieved a measure of success on behalf of his client, it is equally clear, when viewed in light of the complaint, that his success was limited.

Nonetheless, given the importance of assuring worker's rights under the FLSA, even a limited damages award can justify a substantial fee. *See Kalloo,* 977 F.Supp.2d

at 210–11, 2013 WL 6662557, at *1. Here, however, it is clear from the record—including comments made in open court—that the attorney for plaintiff was motivated primarily by his interest in assuring a generous fee for himself, rather than by his interest in vindicating the rights of his client or other workers. For example, at a conference before me on October 10, 2012, plaintiff's counsel stated that he would not take to his client a settlement offer guaranteeing her a payment of $1,700, solely because it did not also include the $23,000 in fees which he claimed to have expended until that point. Tr., October 10, 2012, at 23–24.[3] Reminded of his obligation to take a settlement offer to his client, he stated: "No, I don't have to take it back to my client," because of the fees. *Id.* I advised him, "Your client's claim can't be held hostage to your legal fee, so your client needs to know" of the potential offer. *Id.*

Through the enactment of fee-shifting provisions in certain special categories of cases, such as those brought under the FLSA, Congress intended to ensure that plaintiffs be able to secure competent counsel. *See, e.g., Estrella v. P.R. Painting Corp.,* 596 F.Supp.2d 723, 727 (E.D.N.Y.2009) ("The fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for *qualified* counsel to take such cases under conventional fee arrangements") (emphasis added), *aff'd*

---

1. A copy of Plaintiff's Rule 26(a)(1) Initial Disclosures is annexed to the October 16, 2013 Reply Declaration of Matthew J. Blit (ECF Document # 98), at Exhibit A.

2. Counsel's boast about the amount of the settlement may be read to suggest that he knew at the time he drafted the complaint that the damages claimed at the outset of this

action were inflated, and that he never had a reasonable expectation of recovering damages at the level he claimed.

3. A copy of this transcript is annexed to the October 11, 2013 Declaration of Michael Chong in Opposition to Plaintiff's Motion for Attorney's Fees and Costs (ECF Document # 97) at Exhibit 7.

356 Fed.Appx. 495 (2d Cir.2009) (Summary Order). Congress's intent was decidedly not, however, to create an incentive for counsel to prioritize their interests above those of their clients and to submit exaggerated or overblown requests for fees. Thus, while plaintiff's counsel here may, in fact, have achieved some success for his client, such success must be considered in light of counsel's unwavering focus on his own fees.

### Billing Rates

■ "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections*, 522 F.3d 182, 190 (2d Cir.2008) (addressing the various factors that may go into that determination). In determining the appropriate hourly rate, the court should, among other things, "attempt to approximate 'the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Green v. City of New York*, 403 Fed.Appx. 626, 629 (2d Cir.2010) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998)).

■ Here, plaintiff's attorney requests a $400 fee for himself as the partner. Counsel identifies in a conclusory fashion his years of experience and boasts of plaudits. But his declaration offers no attestation that he in fact seeks and obtains such a rate—or any other rate—from his paying clients. (He has submitted no retainer agreement with his client in this case.) On the contrary, it seems clear that he is seeking such a rate from this court in the first instance. Under all the circumstances, I cannot conclude that the rate requested has a reasonable basis, and it will therefore be reduced to $300 per hour.

■ Plaintiff also seeks fees for one other legal professional, who is referred to as both a "law clerk"—for the period following his graduation from law school but prior to his admission to the bar—and an "associate," which title he assumed once admitted to practice. Plaintiff requests $100 per hour for the pre-admission period and $200 per hour post-admission. Again, however, plaintiff's counsel offers no support for these figures, and they will be reduced to $75 for the period during which this employee was a law clerk, and $125 for the period he was an associate.

### Reasonableness of Hours Expended,

■ Regarding the number of hours expended, I note—in addition to the above comments as to counsel's dominant interest in fees—that plaintiff has failed to establish that the large number of hours for which plaintiff's counsel seeks remuneration is reasonable. Rather, the record shows that the amount of time plaintiff's counsel expended to achieve the $2,000 settlement was excessive.

To begin with, while there can be no dispute that FLSA cases *can be* complex, this was not such a case. As alluded to above, the FLSA and NYLL claims were prosecuted on behalf of a sole plaintiff who worked only a few shifts at the defendants' restaurant; the scope of legal and factual issues to be explored through litigation was limited. Although I have taken into account that defendants contributed to the excessiveness of the litigation,[4] *see Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir.2005), upon review of the entire record, I cannot conclude that plaintiff's counsel's inflated fees were caused primarily by defendant's conduct, nor can I conclude that his accrual of fees was otherwise reasonable. The record reflects, for exam-

---

4. For example, defendants filed a motion to dismiss—rather than a request for a pre-motion conference—in contravention of the court's motion practices, thereby obligating plaintiff's counsel to expend a significant number of hours preparing a response.

ple, the frustration of Magistrate Judge Mann, who has supervised the pretrial proceedings in this case, with the unprofessional conduct of counsel for both sides. One such instance was on April 15, 2013, when she warned plaintiff "to cease filing procedurally improper and repetitious submissions." *See* ECF Document # 64.[5] This admonishment was directed solely at plaintiff's counsel and makes clear that his filings in this matter were not always undertaken in an effort to represent his client's interest most efficiently.

I turn next to the billing records. Some of the entries are vague, but when clarified by my own review of the docket sheet, it is clear that they are plainly not reasonable. For example, on July 31 and August 1, 2012, plaintiff's counsel bills .2 hours for the vague entry of "Motion by Chong" and .2 hours for the equally vague "Opp to Motion."[6] Review of the docket shows that this "Motion by Chong" was, in fact, a request for an extension of time to answer the complaint by a newly retained defense attorney. Rather than taking nearly half an hour to review and respond to this request, counsel's time might have been better spent simply assenting to the request and getting the litigation underway. *See* ECF Documents # 9 and # 10.

While this may seem a minor thing in itself, the billing records are replete with similar unspecific descriptions and expenditures of time for which no justifications are provided. In these instances, the billing records are not sufficiently informative to allow a meaningful evaluation of their reasonableness. For example, after billing 10.5 hours on September 6, 2012 for the preparation of a seven and one-half page memorandum in opposition to the motion to dismiss, plaintiff's counsel bills 2.5 hours for "Opposition to Defenses Motion for Leave to file an answer [sic]." Review of the billing record itself, as well as the docket sheet, provides no basis to conclude that this entry reflects a reasonable expenditure of time.

■ Moreover, some of the entries seem to be for matters that could have been done at a much lower rate by counsel's law clerk or associate, or that should not have been billed by ANY professional staff. Clerical and secretarial work is not compensable, as it is part of overhead and generally not charged to clients. *See, e.g., Hugee v. Kimso Apartments, LLC,* 852 F.Supp.2d 281, 302 (E.D.N.Y.2012); *Sulkowska v. City of New York,* 170 F.Supp.2d 359, 368–69 (S.D.N.Y.2001). Accordingly, I do not find it to be reasonable that the *partner* spent .6 hours *preparing the summons* and *filing* the summons and complaint. *See* billing entries for June 8, 2012.

Plaintiff's counsel has also billed for 3.5 hours of his time for attendance at the October 10, 2012 conference. These hours include travel time, which would presumably have been from his office at 34th Street and Fifth Avenue in Manhattan. Even if the overall time billed is not excessive, the travel time—for which counsel is entitled to only half of the allowed hourly rate—has not been separated out. *See Hugee,* 852 F.Supp.2d at 302.

The associate/law clerk's billing records contain problematic entries as well.[7] They

---

5. While I subsequently ordered that any award of attorney's fees would not include fees incurred after February 12, 2013, plaintiff's counsel was not aware on April 15, 2013 that the February cutoff date would be fixed; and, in any event, Judge Mann's comment reflects her view of the earlier conduct of plaintiff's counsel.

6. The billing records are annexed to the September 12, 2013 Declaration of Matthew J. Blit (ECF Document # 92), at Exhibit A.

7. The billing records of plaintiff's counsel's associate are annexed to the September 12, 2013 Blit Declaration at Exhibit B.

are similarly unclear and insufficiently specific. For example, he appears to charge a full hour's worth of time for an email exchange dedicated solely to *setting up* a phone conference. *See* billing entries for February 4 and 6, 2013. Clearly, this is, at best, clerical work. Where this employee is specific in his billings, the unreasonableness is often readily apparent. For example, he bills 1.5 hours on February 6, 2013 as follows: "Took notes during Conf call between Def. and Mr. Blit" and another half hour for "Prepared Memorandum re: 2/6/13 conference call." Plaintiff's counsel also billed 1.5 hours for the February 6, 2013 conference call. While the use of a lower-paid clerk or associate may be justified if it reduces the hours spent by a higher-billing partner, this case did not warrant duplicative billing by two legal professionals.

 Where the hours billed are excessive and unreasonable, the court may use its discretion to make across-the-board percentage reductions. *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir.1997). Based upon my detailed review of the bills and the docket sheet, my familiarity with the proceedings in this case, and my conclusion, as set forth above, that plaintiff's counsel was motivated more by an interest in his own fees than in achieving maximum efficiencies for his client, I reduce the billable hours as follows: The partner's reasonable billable hours are reduced by approximately half from 93.1 to 47; and, at a billing rate of $300, the award for his hours will be $14,100. The law clerk's hours are reduced by approximately half to 12 hours; at the reduced rate of $75, the award for these hours is $900. The hours billed by the associate are likewise reduced by approximately half to 4 hours; at the reduced rate of $125, the award is $500. In sum, plaintiff will be awarded attorney's fees of $15,500.

*Costs*

 Plaintiff is also entitled to reasonable costs, but, like the fee award, these are limited to those incurred prior to February 12, 2013. Plaintiff's counsel has left out the dates for the costs incurred, and he makes no attempt in his reply papers to rebut defendants' showing that the great bulk of them were incurred after the February 12 cutoff. Plaintiff will therefore be awarded only $350 in filing fees and $110 in reasonable process server fees, which expenses clearly occurred within the time period of allowable costs.

### Conclusion

In light of the foregoing, plaintiff is awarded attorney's fees of $15,500 and costs of $460.

SO ORDERED.